Good morning, Your Honors. I'm David Kronemyer, appellant. The district court did not write an opinion. All we have is a minute order, granting the respondent's motion to dismiss under Rule 12d6. We respectfully submit there are three issues that are involved. The first question here is whether I was a third party beneficiary of the financing agreement. We submit this issue has to be resolved in our favor, particularly as I was specifically named in the financing document. The case might be less clear if the document had referred to a class of people or somebody by title alone. But when an individual's proper name is set forth, it's hard to see how the court could have reached a contrary conclusion. So we have to look at the context of the documents. Third party law says you don't just look at the fact that somebody's name is. He also requires you to look at the context in which it's named. And if one goes through the documents, as the court did, and construes the contracts, how is it that you work your way from the loan and security agreement into a completion agreement coverage? I completely agree with Your Honor, and I believe that all of the documents pertaining to the transaction must be construed together. In this case, the party providing the financing, the Lewis Horowitz Organization, specifically bargained for my services as the executive producer of the film. This is set forth in the agreement and in the financing agreement, and the completion guarantee is the document that guarantees the completion of the financing agreement And that's the second issue, is what is the context in which these documents arrive and how to construe the completion guarantee itself. And we respectfully submit that the completion guarantee was a single part of an integrated transaction where all of the documents cross-referenced each other. The completion guarantee cannot be viewed in isolation, but rather only in the context of the financing agreement, which it was designed to support. And I, again, believe that both California law and federal law support this. But can I just understand, the loan agreement referenced to you is in the reps and warranties, which are explicitly for the benefit of the lender. That's correct. Okay. So you're saying somehow you're a beneficiary of what the lender negotiated on behalf of its own interest. That's correct, Your Honor. The lender anticipated that I would render personal services in connection with this project, which, in fact, were rendered. But I can see that, obviously, the contracting parties thought that was a benefit to them. But where do we get an intent to benefit you by that inclusion? Because that's what's required to find a third-party beneficiary. That's correct, Your Honor. And I believe that that intent is set forth in the document itself. There's no evidence that the Lewis Horwitz Organization, the lender, would have lent that money had I not been specifically named. It was a representation of… Why is that a benefit to you? Well, it's a benefit to me because I was named in the document and should have received the credit as the producer of the film. Right. But the document has to indicate an intent to benefit you as a third party to the agreement. Where do you find that in the agreement? The fact that it mentions you and other people… Right. …who are going to be working on the film… Right. …doesn't by itself indicate there's any intent to benefit you or any of those other folks. I believe it does on its face, Your Honor. The fact that one is named as a… Why don't you do this, Mr. Kramer. Pick one of the documents, whichever one you want, which has the language most favorable to your interpretation that you're intended to be a third-party beneficiary. Can you show me some language in one of the agreements? Yes, it would be… What do you depend on? Which agreement? It would be the loan and security agreement, Your Honor. And then? And what paragraph? If you'll excuse me, I can…  I believe that's correct, Your Honor. All right. What part of 5.13 shows an intent that you would be a third-party beneficiary to this agreement? Paragraph B. Paragraph 5.13, about halfway through the second complete paragraph on the page. It's ER 045 of… Yes. …Excerpts of Record. It states that the pictures shall be produced by Tom Hanks, Gary Goetzman, and Richard Wilson, executive produced by Norm Waite, David Cronemeyer, and Paul Brooks, written by Ania Vardalos and directed by Jules Wick, and none of them shall be replaced except as permitted by the HBO distribution agreement, etc. Well, it shows that that's a, you know, maybe a condition of the loan, but doesn't show that it, to me, any intent that you're to benefit from that, nor is it, you know, for the protection of the borrower, is it? I don't know one more I can say, Your Honor, other than that language specifically confers a benefit on… No, this is all, this is the best you can show us as to what you're depending upon as language in the agreement that manifests the intent of the parties that you'd be a third-party beneficiary. There's another agreement that provides a sense, Your Honor, which is… I said pick your best one, and this is the one you picked. Well, the Lionsgate agreement sets forth substantially the same language, so it appears that… Oh, they're all the same, all right. Twice in the financing document. What do we do with the proviso in 7.13 that says borrowers shall afford lender on-screen credit in the end titles of the picture as follows? There's no such provision in there for you, so to the extent that the lender is concerned about protecting the interest that it's bargaining for, it specifically deals with credit and doesn't have anything in there having to do with anything other than its own interest. I think that that is a different issue, Your Honor. I think the lender in this case also was specifically bargaining as part of the reps and warranties for the personal services of the other individuals. I think it would be odd for the lender to contend that it wasn't bargaining for the personal services of Tom Hanks. He's a very well-regarded actor. And in the same breath, I don't see how the lender can accept a film that credits Mr. Hanks pursuant to the agreement. So if you had absolutely no agreement with anybody to be the producer on this, but the loan service agreement was entered into and the lender decided not to sue the borrower for kicking you off the film. Right. I understand you stayed on the film, but you didn't get credits. But let's assume you have no other agreements. Simply, you showed up, you did the work, there's no written agreement between you and anybody else. But the only document you've got is this document. Are you saying that that would be enough to create a lawsuit against the defendants because under this contract loan agreement, you have been granted substantive employment rights? There were other employment contracts, Your Honor. No, I'm not talking to you. I'm saying there are no employment agreements. I'm saying the only agreement that exists is a loan agreement in which the lender gets the borrower to agree to this very language. You're saying that gives you the right to sue for failure to retain you and employ you? No. What's the difference? You're a third-party beneficiary under either reading, aren't you? Of course, the agreement has to be supported by underlying contracts itself. In this case, should it go to trial, the evidence will disclose that there were underlying employment agreements between the special purpose entity formed to produce the movie and all of these other named individuals. This was simply a recitation for the lender's benefit, confirming the existing employment relationships. And while this clause in and of itself did not grant specific credit conditions, as did the other clause that Your Honor cited, I believe that the lender complied with this. What's the underlying document that guarantees you credit other than this? A producer agreement, Your Honor. And the producer agreement does that? Absolutely. I wouldn't be bringing this action if it hadn't. And I think just to conclude on this point, it's interesting to see that everybody enumerated there did get credit, Mr. Hanks, Mr. Getzman, Ms. Wilson, Mr. Waite, except for myself, which clearly indicates the extent of the lender's reliance on this. Did the lender bring any action for your not getting credit? No. You've got about a minute left. Do you want to hit any other points? Well, I would just bring up what I think is the final issue. Can I ask this question? Of course, Your Honor. To follow that through. If the lender had entered into a settlement agreement with the borrower saying to resolve this issue, would that be binding on you? That is the issue you didn't get credit? I don't believe it would. I don't believe that it would be within the power of those contracting parties to retroactively disenfranchise a true third-party beneficiary of the contract. The third and final issue, quite briefly, is what was guaranteed. And while we don't know for sure, the district court evidently did not believe that the completion guarantee extended to credits, rather only to physical film elements. I believe that Respondent would have us get bogged down in issues that only can be characterized as metaphysical. We respectfully submit that the defective credit issue is every bit as odious and is covered by the completion guarantee as a defective film element. There certainly is nothing in the completion guarantee to distinguish them. It covers mechanical defects in the film elements and thus should be interpreted as covering defects in the credit also. All right. You've exceeded your time. Thank you. Thank you very much. All right. Let's hear from the appellee. Good morning. My name is Joseph Gabriel, counsel for Defendant and Appellee Motion Picture Bond Company. Rather than reiterate many of the comments that the Court has already made through its questioning already, I would just like to point out that we agree that we are very much puzzled by how this particular appellant can argue that he is a third party beneficiary of the completion bond. We don't think, just as the Court, I believe, doesn't think that merely mentioning your name in an attachment is enough to create an intent to benefit you as a third party beneficiary and enough to allow you to enforce obligations under the agreement. One thing I'd like to point out, it came up near the end of Appellant's argument, is that he conceded that he is under a contract, he had a contract with the producer to provide producer services. And as we've indicated in our briefs, that seems to be the direct route for him to have taken by trying to shoehorn himself into this completion bond. Now, so far in the argument the completion bond incorporate the loan services agreement? It is attached, yes. So you're not saying that if the clause were intended to make him a third party beneficiary, that the completion guarantee is a totally independent and separate document to which the loan services agreement is irrelevant? I'm saying that the loan service agreement is attached and is part of the completion bond, but only insofar as is necessary to identify what had to be completed and delivered, what tangible property had to be completed and delivered under the terms of the completion bond. And that brings us to a discussion of the bond itself. And you want to distinguish credits as being not tangible? That is correct, Your Honor. And I think that that hits it right on the head. What we have here is a bond that guarantees the delivery of the film elements, the sound elements, the things that are necessary to get into a lab and to be delivered to a jury. Well, a sound element isn't tangible either, is it? A sound element? Yes, it is, Your Honor. We're talking about an actual tape. What it amounts to nowadays is a computer tape. It's embodied in the tape, but you can embody credit in the film. You're talking about, Your Honor, I understand, Your Honor, you're talking about the actual produced by credits that might be shown on here. But what we're talking about in the completion bond, I think the expression of it is quite clear in the bond itself. We're only talking about the physical element, not the intangible rights that may arise out of that. And that is what Mr. Conemeyer is arguing. Well, let me ask you, I mentioned 713 in the loan service agreement. Is it your contention that if you failed to, if that was not delivered, that is, that screen credit to the lender, that the completion guarantee wouldn't have any coverage or obligation? Your Honor, our position on that is that if the film did not come with credits. No, this credit. This particular credit? Right. The credit that's identified in 713. Right. There would be a potential claim on the bond. However, the claim would be made by the beneficiaries of the bond, not by Mr. Conemeyer. But you're just saying credits aren't tangible. That is because the film is not, the film is not complete. The tape is not complete. Well, that's what his argument is. His argument is that because he's entitled to damages that flow from the fact that his credit did not appear. His argument is that. Well, I assume that that would be the same argument of the lender in this case. You didn't give us the credit. We've been damaged. Our reputation, we count on that so that the industry knows that we've financed this blockbuster that came out. Isn't that what their damages would be? I do not believe that that's what the damage claim, that it would cover that. I believe that the damage claim would be that a component of the film was not there. It wouldn't be the consequential damages that would flow. What would the damage be? In other words, let's suppose the loan, I'm just focused on your argument on tangibility. Here's a loan services agreement which says we're supposed to get this credit. And you're saying that that could be covered. Okay. Then it must, that means that credits in some fashion must be tangible. Right? Yes, the tangibility is that it appears on the screen. All right. So and then you're saying if they sue you, they're just going to sue you for what? The value of the film? You know, the, you've got to be kidding. I assume they'd come in and argue that we're supposed to be getting that credit and we've been damaged by not getting the credit. What would happen in that case, Your Honor? I don't think he's arguing. It would be a different situation. Would it happen in that case? The completion bond company would be required to step in and fix it, not to pay money on it, but to get the credits into the film. That's not what Mr. Cronenmeier is asking. Mr. Cronenmeier is asking the court process to give him damages because it wasn't in there. Okay. That's the difference that we're talking about. I believe to confirm what I'm saying here, the court needs to look at the exclusion, a very significant exclusion. Can I just ask a question? Because I don't know this industry that well. Let's suppose that they didn't do that. They failed to step in and get the credits inserted into the film. Then what? Then it's out there and all the prints are out in all the theaters and this thing's taken off like gangbusters. Again, we're talking about as a practical matter what would happen. What would happen is the prints would never go out there because it would have been rejected at the source. They would say the delivery would be rejected by the distributor. Now you're telling me factually that it can't happen. But if it did happen, you're saying that there's some principle of losses. I'm just trying to understand. You're saying that there's no theory under which if the credits do the lender, didn't get into the print that was distributed throughout the country and this baby took off as it did, that they wouldn't have a damage claim? I'm not aware of how that type of damage claim would arise because what would happen is the film would be rejected, the claim would be made to the completion bond company, get it fixed, and it would be fixed before it would be delivered. You're begging the question now. Okay. Well, I'm trying to address Your Honor's question as best I can, but if you look to the bond itself. I'm just trying to talk about legal theory here. You're telling me factually it wouldn't happen. I'm saying let's suppose factually it did. Are you saying there's some principle of law that says failure to give credit like this and it does get out and it does happen, that there's a principle of law that covers completion guarantee bonds that says you can't be held liable for consequential damages? No, I'm saying within the terms of the bond itself, I think the way the claim would be resolved would be under these terms is bring those prints back, get those credits on there. It's almost like having to make a timely claim, isn't it? I'm sorry? It's almost like having to make a timely claim. That is correct, Your Honor. If your scenario comes to pass, there would be the prints would have to be hailed back. Damage would be paid that way, not as Mr. Kornemeier is saying, give me the consequential damages that flow from the fact that I did not receive a credit. Okay. Rather than proceed, I believe I should leave it open for questions and I will submit it if there are no questions. I guess there aren't any more. All right. Thank you. We thank both counsel. This case is then now submitted for decision. This case is sentient studio versus travelers insurance. Morning.
judges: T.G. Nelson, Tashima, Fisher